AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  3:16-mj 37 |
| LAILA ALAYAT | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

FEB 1 0 2016

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ see below _____ in the county of _____ Richmond City _____ in the _____ Eastern _____ District of _____ Virginia, and elsewhere _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 371 | Conspiracy to Traffic Contraband Cigarettes |
| 18 U.S.C. Section 2342(a) | Trafficking Contraband Cigarettes |
| 31 U.S.C. Section 5324 | Structuring |
| 18 U.S.C. Section 1512(b)(1) | Witness Tampering |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:

Thomas A. Garnett

Sworn to before me and signed in my presence.

_____
*Complainant's signature*

Stacey Ivie
*Printed name and title*
Deputized U.S. Marshal

Date: _____ 02/10/2016 _____

City and state: _____ Richmond, Virginia _____

/s/ _____
Roderick C. Young
**United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 3:16mj $3\,7$ |
| | ) |
| EYAD SALAHEDIN | ) |
| | ) |
| and | ) |
| | ) |
| LAILA ALAYAT, | ) |
| | ) |
| *Defendants.* | ) |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Stacey Ivie, being duly sworn, depose and say:

### INTRODUCTION

1.    I am a Police Detective with the Alexandria Police Department, (APD), where I have been employed since 2002.  During my employment with APD, I have been a detective for over ten years and have investigated numerous types of crimes, including but not limited to fraud, money laundering, cigarette trafficking and organized crime. I have also received specialized training in areas to include the preparation and execution of search warrants.  Since November 19, 2011, I have been assigned to the High Intensity Drug Trafficking Area (HIDTA) Task Force in Annandale, Virginia, on a project investigating possible money laundering, structuring, and other illegal financial activity, specifically violations of 18 U.S.C. §§ 1956, 1957, and 1960, and 31 U.S.C. §§ 5316, 5324, and 5330.  Since December of 2010, I have been deputized with the United States Marshals Service.

1

2.     This affidavit is in support of arrest warrants for EYAD SALAHEDIN and LAILA

ALAYAT.  A photo of EYAD SALAHEDIN obtained by law enforcement from the Virginia

Department of Motor Vehicles (DMV) is attached as **Exhibit 1**; a photo of LAILA ALAYAT

obtained by law enforcement from the New Jersey DMV is attached as **Exhibit 2**.

3.     I have conducted this investigation with assistance from other law enforcement officers

including but not limited to a Special Agent of the U.S. Department of Homeland Security,

Homeland Security Investigations ("HSI"), a Detective from the New Jersey Office of Homeland

Security and Preparedness, and Special Agents from the New Jersey Department of Treasury,

Office of Criminal Investigation (OCI).  This affidavit is based upon my personal knowledge, my

conversations with other law enforcement agents and sources upon interviews, and upon my

examination of various transcripts, reports, and other records.  When the contents of documents

or statements of others are reported herein, they are reported in substance and part unless

otherwise indicated.

4.     Because this affidavit is being submitted for the limited purpose of securing arrest

warrants for EYAD SALAHEDIN and LAILA ALAYAT, I have not included each and every

fact known to me concerning this investigation.  I have set forth facts I believe are necessary to

establish probable cause to believe that EYAD SALAHEDIN and LAILA ALAYAT committed

violations of 31 U.S.C. § 5324 (Structuring) and 18 U.S.C. §§ 371 (conspiracy to traffic

contraband cigarettes), 2342 (trafficking contraband cigarettes), and to believe that LAILA

ALAYAT committed a violation of 1512(b)(1) (witness tampering).

5.     Law enforcement officers utilized cooperating witnesses throughout this investigation.

For the purpose of this affidavit, all cooperating witnesses will be referred to in the masculine

gender. Each cooperating witness has provided information against his own penal interest; said information has been independently corroborated by law enforcement, and is considered reliable.

## DETAILS OF THE INVESTIGATION

### Structuring to Avoid Form 8300 Reporting Requirements

6.  Based on training, experience, and participation in other financial investigations involving concealment of funds and assets from detection of law enforcement and other government agencies, I know that:

7.  Title 31, United States Code, Section 5331, and regulations implemented pursuant to that section, require persons engaged in a trade or business that receive more than $10,000 in currency as part of a single transaction (or two or more related transactions) to report those transactions to the government on a Form 8300. Form 8300s are required to contain certain information regarding the identification of the individual who provided more than $10,000 in currency to the trade or business. Federal law thus requires merchants engaged in a nonfinancial trade or business, such as cigarette wholesale businesses, to complete and file a Form 8300 upon each receipt by the merchant of more than $10,000 in cash in one or related transactions.

8.  Based on my training and experience, individuals involved in criminal activity will often break down purchases of goods from trades or businesses into multiple, smaller transactions, so that no single purchase involves in excess of $10,000 in U.S. currency, the amount which triggers the reporting requirement set out in 31 U.S.C. § 5331.

9.  Many individuals involved in illegal activities are aware of such reporting requirements and take active steps to evade these reporting requirements. These active steps are often referred to as "structuring," and involve making multiple purchases, each of which falls below the

amount of $10,000.01, to avoid the filing of a Form 8300. Structuring currency transactions to avoid the reporting requirements of Section 5331 is prohibited by 31 U.S.C. § 5324(b).

## Contraband Cigarette Trafficking Statutes

10. Title 18 U.S.C. § 2342 criminalizes cigarette trafficking – that is, the transportation and sale of contraband cigarettes. Cigarettes are manufactured with a tax stamp for the state in which they are to be distributed. Transporting more than 10,000 cigarettes from the state in which they are tax stamped to another state without obtaining the proper license or tax stamps for that state in which they are to be sold causes those cigarettes to become, under 18 U.S.C. § 2341, contraband cigarettes. A conspiracy to traffic contraband cigarettes would involve making overt acts in furtherance of the activity; for example, receiving and filling orders from customers located in states north of Virginia, such as Maryland, New Jersey or New York, or knowingly selling cigarettes to individuals who intend to resell those contraband cigarettes outside Virginia.

## Witness Tampering Statute

11. Title 18 U.S.C. § 1512(b)(1) criminalizes the act of knowingly intimidating, threatening, or corruptly persuading another person – or the knowing attempt to do so – with the intent of influencing, delaying, or preventing the testimony of any person in an official proceeding.

## I.    BACKGROUND OF INVESTIGATION

12. On October 2, 2013, a search warrant was executed at the residence of EYAD SALAHEDIN in Paterson City, New Jersey by law enforcement officers as part of an investigation into the transportation of illicit U.S. currency and untaxed cigarettes. The New Jersey State Police Investigation Report identified EYAD SALAHEDIN and a second conspirator as the perpetrators. During the investigation, EYAD SALAHEDIN stated he did not

4

believe it was a big deal to possess cigarettes and that he was being paid by someone to obtain the cartons of cigarettes. Items seized during the search warrant included $38,085 in U.S. currency, a bill counter, a ledger containing various currency denominations, 1,696 counterfeit New Jersey Tax Stamps, 920 counterfeit New York tax stamps, and a Scotch Super 77 multi-purpose spray adhesive (which, in my training and experience, I know to be a tool commonly used by cigarette traffickers to affix counterfeit tax stamps to contraband cigarettes).

13. A query of EYAD SALAHEDIN's criminal history reflected the following charges related to this offense date: selling unstamped cigarettes, forgery and conspiracy thereof, possession of property from criminal activity, trademark counterfeiting and conspiracy thereof, possession of untaxed cigarettes, fraud/forged/alter counterfeit, failure to maintain books/records, not licensed with division of taxation, and deal with person not licensed. EYAD SALAHEDIN was sentenced to pretrial intervention in March of 2015. EYAD SALAHEDIN is subject to pretrial intervention stipulations until September 30, 2016.

14. After this 2013 arrest, law enforcement received information that EYAD SALAHEDIN continued to be involved in the sale of contraband cigarettes. Investigators subsequently conducted extensive surveillance, debriefed confidential witnesses, and executed multiple controlled buys of Virginia-stamped contraband cigarettes from EYAD SALAHEDIN in New Jersey. As a result of the investigative steps taken to date, law enforcement has determined that EYAD SALAHEDIN and his associate, LAILA ALAYAT, are supplying contraband Virginia-stamped cigarettes to purchasers in New Jersey.

15. Law enforcement has confirmed, through debriefings of confidential sources, recorded phone calls, and surveillance, that LAILA ALAYAT uses the name "Sabrina Adam" as an alias.

5

16.   In or about April 2014, a confidential source (CW-1) reported that while in Virginia, EYAD SALAHEDIN attempted to recruit him into a partnership to sell contraband cigarettes. EYAD SALAHEDIN wanted CW-1 to open up a "front" tobacco shop in Virginia in an effort to circumvent Virginia laws (which limit the number of cartons an individual can buy), to allow EYAD SALAHEDIN to purchase larger quantities of cigarettes without raising suspicions.

17.   In or about September 2014, a conversation occurred between EYAD SALAHEDIN and another confidential source (CW-2) discussing the purchase of Virginia-stamped cigarettes. Following (and as a result of) this conversation, CW-2 executed a controlled buy of several cartons of Virginia-stamped cigarettes from EYAD SALAHEDIN in New Jersey.  During the buy, surveillance units observed EYAD SALAHEDIN driving a black Dodge 1500 truck (bearing Virginia license plate "USFORM").

18.   In or about November 2014, law enforcement observed a second controlled buy of untaxed Virginia-stamped cigarettes from EYAD SALAHEDIN in New Jersey.  During EYAD SALAHEDIN's sale of these contraband cigarettes, he was accompanied by LAILA ALAYAT.

19.   Law enforcement had previously observed LAILA ALAYAT accessing a U-Haul trailer leased to EYAD SALAHEDIN and parked at ALAYAT's residence, at 53 Ferrara Avenue, Wayne, New Jersey.  Surveillance confirmed that this trailer was used to store cigarettes.

20.   A records query reflected that LAILA ALAYAT was charged on June 10, 2014, in Maryland, with transporting unstamped cigarettes, and possession with intent to sell over thirty cartons of cigarettes.  ALAYAT subsequently received a sentence of probation.

21.   Also in or about November 2014, law enforcement observed EYAD SALAHEDIN driving multiple vehicles throughout the day.   During this surveillance, law enforcement

observed EYAD SALAHEDIN transfer at least 18 cases of cigarettes to LAILA ALAYAT's residence at 53 Ferrara Avenue, Wayne, New Jersey.

22. In or about December 2014, a license plate reader captured a photo of a second truck belonging to EYAD SALAHEDIN, a black Ford F-150 (bearing Virginia license plate # "US FARM"), in the parking lot of a Sam's Club located at The Shops at White Oak Village, 4571 South Laburnum Avenue, Henrico, VA. The truck's tailgate was observed down, exposing several half cases of Newport cigarettes in the bed of the truck. Seven minutes prior to the capture time of this photograph, SABRINA ADAM (again, the alias regularly used by LAILA ALAYAT) had completed a corresponding tobacco purchase at that same Sam's Club location.

23. In or about January 2015, a New Jersey State Fire Marshal K-9 unit, trained to detect the odor of tobacco products, made a positive hit for tobacco on units utilized by EYAD SALAHEDIN at Extra Space Storage in Clifton, NJ. Law enforcement surveillance has confirmed that SALAHEDIN transfers cases of cigarettes to various individuals, known and unknown to law enforcement, from that storage unit.

24. In or about February 2015, surveillance units observed EYAD SALAHEDIN, operating the Ford F-150 truck bearing Virginia license plate # VDW 7979, arrive at LAILA ALAYAT's residence, located at 53 Ferrara Ave. EYAD SALAHEDIN and a second individual unloaded the truck, moving approximately 18 cases of cigarettes into the house and attached garage at 53 Ferrara Ave. Various suspected buyers were observed at the residence shortly thereafter.

25. CW-1 reported that EYAD SALAHEDIN was in possession of a Sam's Club membership card bearing the photo of EYAD SALAHEDIN, but the name of "WESAM SALAHEDIN." CW-1 further advised law enforcement that "WESAM SALAHEDIN" is the brother of EYAD SALAHEDIN, and that the actual "WESAM SALAHEDIN" had been out of

the country for the last several years. CW-1 advised law enforcement that EYAD SALAHEDIN regularly utilizes his brother's name as an alias. A subsequent query of law enforcement databases confirmed that a WISAM KHALIL SALAHEDIN, brother of EYAD SALAHEDIN, had in fact departed the United States on April 25, 2007, flying from JFK Airport to Jordan. The US passport assigned to WISAM KHALIL SALAHEDIN expired in 2008; law enforcement databases do not reflect that WISAM KHALIL SALAHEDIN has returned to the United States.

26.    Records at Sam's Club reflect that EYAD SALAHEDIN, on behalf of himself, his alias "WESAM SALAHEDIN," and several fictitious business entities; LAILA ALAYAT, who has been visually identified by law enforcement utilizing the alias "SABRINA ADAM;" and various other individuals using business membership cards linked to EYAD SALAHEDIN and LAILA ALAYAT have completed more than $9,500,000 of cash purchases of Virginia-stamped cigarettes at Virginia Sam's Club locations in approximately 16 months. Of the hundreds of transactions involved, no single purchase has exceeded $10,000 in US currency, the amount at which the Sam's Club would have been required to complete a Form 8300 documenting the identifying information of the purchaser.

27.    Between 2014 and 2015, the Virginia Office of the Attorney General's Tobacco Enforcement Unit identified the below six businesses, each linked to EYAD SALAHEDIN and/or LAILA ALAYAT. Each of these six businesses was created online.

| BUSINESS NAME | BUSINESS ADDRESS |
|---|---|
| MOONLIGHT | 7840 WEST BROAD ST., RICHMOND, VA 23294 |
| ALL TIME CORP | 6100 JAHNKE ROAD, RICHMOND, VA 23294 |
| SUNSHINE TOBACCO | 1375 OLD BRIDGE ROAD, WOODBRIDGE, VA 22192 |
| ESPINOZA MARKET | 8913 PATTERSON AVE., RICHMOND, VA 23229 |
| SMOKE SHOP 3 | 4893 PRINCE WILLIAM PARKWAY, WOODBRIDGE, VA 22192 |
| TOBACCO FOR EVER | 12800 MARBLESTONE DR., WOODBRIDGE, VA 22192 |

28.   Per the Virginia Department of Taxation Business Registration Form ("R1 Tax" filing), MOONLIGHT was created as a sole proprietor on March 25, 2014, with a beginning liability date of May 2014 and an ending liability date of May 2014.  Records reflect "Wesam Salahedin" as the corporate officer, and an address of 7840 W. Broad Street, Richmond, VA 23294.  No Virginia state taxes were ever paid by this business.  Law enforcement attempted to conduct surveillance of this business address, but found that no physical structure exists at this location.

29.   Per the Virginia R1 Tax filing, ALL TIME CORP was created as a sole proprietor on June 13, 2014, with a beginning liability date of September 2014 and an ending liability date of September 2014.  Records reflect "Wesam Salahedin" as the corporate officer, and an address of 6100 Jahnke Rd., Richmond, VA 23225.  No Virginia state taxes were ever paid by this business. Law enforcement surveillance of this business address confirmed that ALL TIME CORP was never located at this address.

30.   Per the Virginia R1 Tax filing, SUNSHINE TOBACCO was created on May 23, 2014 as a sole proprietor, and had a beginning liability date of June 2014 and an ending liability date of June 2014.  Records reflect "Wesam Salahedin" as the corporate officer, and an address of 1375 Old Bridge Rd., Woodbridge, VA 22192.  No Virginia state taxes were ever paid by this business.  Law enforcement surveillance of this business address confirmed that SUNSHINE TOBACCO was never located at this address.

31.   Per the Virginia R1 Tax filing, SMOKESHOP 3 was created on July 3, 2014 as a sole proprietor, with a beginning liability date of September 2014 and an ending liability date of September 2014.  Records reflect "Wesam Salahedin" as the corporate officer, and an address of 4893 Prince William Parkway, Ste. 201, Woodbridge, VA 22192. No Virginia state taxes were ever paid by this business.  On April 30, 2015, law enforcement conducted surveillance at this

business location, and could not locate any suite displaying this business name. In fact, the door of Suite 201 (the purported address) instead bore signage displaying the business name of "Ready to Ride Insurance."

32.   Per the Virginia R1 Tax filing, TOBACCO FOR EVER was created on May 23, 2014 as a sole proprietor with beginning liability date of June 2014 and an ending liability date of June 2014. It reflected corporate officer "Wesam Salahedin" as the registered agent with an address of 12800 Marlbestone Dr., Woodbridge VA 22192.  On July 15, 2014, surveillance was conducted at 12800 Marblestone Dr., Woodbridge, VA 22192 (the business address) and the signage at that location displayed only the name "SG Creations."

33.   Per the Virginia R1 Tax filing, ESPINOZA MARKET was created on October 20, 2014 as a sole proprietor, with a beginning liability date of October 2014 and no ending liability date. Records reflect "Arvenis Espinoza" as the corporate officer, and an address of 8913 Patterson Avenue, Richmond, Virginia 23229.  Law enforcement surveillance confirmed that this address belongs instead to a camera business.  Furthermore, other than being listed as the "corporate officer" in ESPINOZA MARKET's online business filing, Arvenis Espinoza appears to have no other actual connection with or relationship to ESPINOZA MARKET.

34.   Law enforcement has reviewed the Commonwealth of Virginia Sales and Use Tax Certificates of Exemption (Form ST-10) for each of the six businesses described above. Those forms, which exempt a wholesaler from paying the Virginia sales and use tax when purchasing personal property for re-sale purposes, indicated that each of the six businesses was engaged in the sale of tobacco, groceries, and gifts.  The "dealer name" provided for one of the six businesses was that of EYAD SALAHEDIN; for four of the businesses, the "dealer name" was that of WESAM SALAHEDIN.

## SAM'S CLUB CIGARETTE PURCHASES BY BUSINESS

35.   Your affiant has obtained and reviewed purchase records maintained by Sam's Club for Sam's Club membership #726950983, assigned to the MOONLIGHT business entity.  These records reflect the business membership account was opened on March 26, 2014 and the total cash purchase of cigarettes conducted on behalf of MOONLIGHT by all of its cardholder members between March 26, 2014 and August 20, 2015 is $2,165,403.40.  Of that total amount, EYAD SALAHEDIN conducted a total of $1,073,619.05 in cash purchases of cigarettes between March 26, 2014 and February 21, 2015.  SABRINA ADAM (the alias of LAILA ALAYAT) conducted a total of $46,188.93 in cash purchases of cigarettes between January 5, 2015 and February 14, 2015.  WESAM SALAHEDIN (the alias of EYAD SALAHEDIN) conducted a total of $392,967.37 in cash purchases of cigarettes between April 2014 and August 2015.

36.   Your affiant has obtained and reviewed purchase records maintained by Sam's Club regarding Sam's Club membership #735364150, assigned to the TOBACCO FOR EVER business entity.  These records reflect the business membership account was opened on May 28, 2014, and the total cash purchase of cigarettes conducted on behalf of TOBACCO FOR EVER (by all of its cardholder members) between May 28, 2014 and July 30, 2015, is $2,171,701.71.  Of that total amount, SABRINA ADAM (the alias of LAILA ALAYAT) completed a total of $272,559.53 in cash purchases of cigarettes between December 18, 2014 and February 19, 2015.  WESAM SALAHEDIN (the alias of EYAD SALAHEDIN) conducted a total of $ 1,379,375.21 in cash purchases of cigarettes between May 28, 2014 and July 30, 2015.

37.   Your affiant has obtained and reviewed purchase records maintained by Sam's Club regarding Sam's Club membership #735365553, assigned to the SUNSHINE TOBACCO business entity.  These records reflect the business membership account was opened on May 28,

11

2014, and the total cash purchase of cigarettes conducted on behalf of SUNSHINE TOBACCO (by all of its cardholder members) between May 28, 2014 and August 28, 2015, is $1,180,997.24. Of that total amount, SABRINA ADAM (the alias of LAILA ALAYAT) conducted a total of $354,915.90 in cash purchases of cigarettes between July 31, 2014 and February 15, 2015. WESAM SALAHEDIN (the alias of EYAD SALAHEDIN) conducted a total of $672,753.56 in cash purchases of cigarettes between May 28, 2014 and August 12, 2015.

38. Your affiant has obtained and reviewed purchase records maintained by Sam's Club regarding Sam's Club membership #737265439, assigned to the business entity ALL TIME CORP. These records reflect the business membership account was opened on June 13, 2014, and the total cash purchase of cigarettes conducted on behalf of ALL TIME CORP (by all of its cardholder members) between June 17, 2014 and August 20, 2015 is $1,108,227.28. Of that total amount, SABRINA ADAM (the alias of LAILA ALAYAT) conducted a total of $411,671.27 in cash purchases of cigarettes between November 23, 2014 and February 15, 2015. WESAM SALAHEDIN (the alias of EYAD SALAHEDIN) conducted a total of $480,758.63 in cash purchases of cigarettes between June 17, 2014 and July 30, 2015.

39. Your affiant has obtained and reviewed purchase records maintained by Sam's Club regarding Sam's Club membership #739786499, assigned to the business entity SMOKE SHOP 3. These records reflect the business membership account was opened on July 5, 2014, and the total cash purchase of cigarettes conducted on behalf of SMOKE SHOP 3 (by all of its cardholder members) between July 7, 2014 and August 20, 2015 is $1,421,992.05. Of that total amount, SABRINA ADAM (the alias of LAILA ALAYAT) conducted a total of $364,824.78 in cash purchases of cigarettes between July 31, 2014 and February 14, 2015. WESAM SALAHEDIN (the alias of EYAD SALAHEDIN) conducted a total of $399,534.05 in cash

purchases of cigarettes between July 7, 2014 and August 18, 2015.

40. Your affiant has obtained and reviewed purchase records maintained by Sam's Club regarding Sam's Club membership #754737229, assigned to the business entity ESPINOZA MARKET. These records reflect the business membership account was opened on October 20, 2014, and the total cash purchase of cigarettes conducted on behalf of ESPINOZA MARKET (by all of its cardholder members) between October 20, 2014 and February 14, 2015 is $810,007.10. Of that total amount, SABRINA ADAM (the alias of LAILA ALAYAT) conducted a total of $438,248.46 in cash purchases of cigarettes between October 20, 2014 and February 12, 2015.

41. Neither SALAHEDIN, ALAYAT, or any of the six businesses listed above have ever filed tax returns indicating the purchase or subsequent sale of any quantity of cigarettes, let alone an accumulation of some $9.5 million.

## STRUCTURING OF CIGARETTE PURCHASES

## TO AVOID THE FORM 8300 FILING REQUIREMENT

42. The transactions referred to in Paragraphs 35-40 are unusual in that an aggregate of $6,287,416.74 in cash was tendered on the same, consecutive, and closely consecutive days at various Sam's Club business locations, and yet of the 1,735 cash transactions comprising this amount, not a single cash transaction exceeded $10,000, the amount that would trigger the Form 8300 filing requirement (and with it, the collection of the purchaser's identifying information).

43. Of the 1,735 cash transactions made between March 26, 2014 and August 18, 2015; 256 transactions were completed in amounts between $9,039.30 and $9998.73, and another 55 transactions in amounts between $8,013.51 and $8997.97. Not one exceeded $10,000, the amount that would trigger the filing of a Form 8300.

44.  EYAD SALAHEDIN (aka WESAM SALAHEDIN) and LAILA ALAYAT (aka SABRINA ADAM) completed these 1,735 transactions on more than 300 separate days, visiting numerous Sam's Club locations each day to make often-identical purchases. There is no known or apparent rationale for this dispersed, time-consuming transaction activity other than a deliberate, concerted effort to purchase as many cigarettes as possible without triggering the filing of a Form 8300 that could alert authorities to the volume of the cigarettes being purchased with cash – and who was purchasing them.

45.  For example, on May 9, 2014, EYAD SALAHEDIN completed four cash transactions totaling $33,480.00 over the course of eight hours at four different Sam's Club locations. It is believed that EYAD SALAHEDIN devised a scheme to break down that total amount into multiple, smaller transactions in a deliberate effort to avoid the filing of a Form 8300 documenting his identification. This conclusion is further supported by the details of EYAD SALAHEDIN's transactions that day. Three of those transactions dealt with the same exact brand of cigarette, Newport Box 100s:  At 7:27 a.m., EYAD SALAHEDIN purchased 210 cartons of Newport Box 100s (valued at $9,765) utilizing the MOONLIGHT business membership card at Richmond store #4788. At 8:54 a.m., EYAD SALAHEDIN purchased 210 cartons of Newport Box 100s (valued at $9,765) at Colonial Height store #6524. At 4:20 p.m., he purchased 210 cartons of Newport Box 100s (valued at $9,765) at Midlothian store #6354. By breaking up the purchase of more than $10,000 worth Newport Box 100s into three different transactions, completed at three different locations, in a span of eight hours, EYAD SALAHEDIN deliberately executed a considered, time-consuming scheme to avoid the filing of any Form 8300s.

46.  On November 13, 2014, SABRINA ADAM (LAILA ALAYAT's alias), using an

14

ESPINOZA MARKET business membership card, completed eight cash transactions totaling $41,0870.42 at four different Sam's Club locations over a time span of approximately eight hours. SABRINA ADAM conducted seven of these eight cash transactions over a time span of barely five hours at four different Sam's Club locations for the *sole* purpose of purchasing Newport Box 100s. SABRINA ADAM purchased 150 cartons of Newport Box 100s (valued at $7,065.00) at Midlothian store # 6354 at 7:24 a.m.; purchased 30 cartons of Newport Box 100s (valued at $1,413.00) at Richmond store #4788 at 8:56 a.m.; purchased 180 cartons of Newport Box 100s (valued at $8,478.00) at Colonial Heights store #6524 at 9:33 a.m.; purchased 15 cartons of Newport Box 100s (valued at $706.50) at Richmond store #6343 at 10:24 am.; purchased 15 cartons of Newport Box 100s (valued at $706.50) at Richmond store #6343 at 10:25 a.m.; purchased 15 cartons of Newport Box 100s (valued at $706.50) at Richmond store #6343 at 10:45 a.m.; and finally, purchased 210 cartons of Newport Box 100s (valued at $9,891) at the Colonial Heights store #6524 at 12:24 p.m. By breaking up her purchase of more than $10,000.01 worth of Newport Box 100s into seven different transactions at four different locations in the span of approximately five hours, each in an amount under the Form 8300 threshold, SABRINA ADAM (aka LAILA ALAYAT) deliberately structured her transactions to avoid the filing of a Form 8300.

47. During the course of EYAD SALAHEDIN's and LAILA ALAYAT's cigarette purchases under the names of fictitious businesses, the two demonstrated an understanding that only *cash* transactions of more than $10,000 trigger the filing of a Form 8300. On at least three separate occasions, one of those individuals engaged in a cigarette purchase where the total retail price exceeded $10,000.01. SALAHEDIN and/or ALAYAT would complete the transaction – but tender just below $10,000 in cash, making up the difference with another method of payment (a

stored value card, e.g.).

## Witness Tampering

48.     During the course of the above-described investigation, law enforcement developed a third confidential informant, CW-3. That individual is an associate of LAILA ALAYAT, and has in the past assisted LAILA ALAYAT with cigarette trafficking activities. CW-3 also provided law enforcement with information about LAILA ALAYAT that was subsequently corroborated by law enforcement, to include details of LAILA ALAYAT's trafficking activities; ALAYAT's associates; the vehicles used in the course of LAILA ALAYAT's trafficking; and the false identities (and several false identity documents) utilized by LAILA ALAYAT during ALAYAT's trafficking activities.

49.    In early December 2015, the United States Attorney's Office delivered target letters to LAILA ALAYAT and EYAD SALAHEDIN, informing both of the existence of a federal grand jury investigation into the conduct described above.

50.    After conversations between the United States Attorney's Office and the defense attorneys obtained by SALAHEDIN and ALAYAT, reverse proffer meetings were scheduled in Richmond, Virginia, to be held on January 7, 2016.

51.    Several days before the reverse proffer, CW-3 informed law enforcement that LAILA ALAYAT had told CW-3 about the upcoming reverse proffer, and asked CW-3 to attend and translate for ALAYAT.   Law enforcement had not informed CW-3 of this meeting's existence. CW-3 also relayed that ALAYAT instructed CW-3, when presented with photos of ALAYAT during the proffer, to lie to investigators and claim that the images of ALAYAT were actually

photos of "Sabrina Adam." ALAYAT instructed CW-3 to claim that "Sabrina Adam" was ALAYAT's "cousin," but that "Sabrina Adam" had since left the United States for Jordan. CW-3 stated that ALAYAT offered CW-3 $500 if CW-3 did as requested.

52. CW-3 later provided law enforcement with screen shots of subsequent text message exchanges between herself and ALAYAT, in which ALAYAT again discussed what CW-3 should tell investigators about the identity of "Sabrina Adam." Law enforcement also obtained a recording of a phone call between ALAYAT and CW-3 in which ALAYAT admitted to using the alias "Sabrina Adam," and questioned how law enforcement had discovered her alias.

## II.   VIRGINIA AND NEW JERSEY EMPLOYMENT COMMISSIONS

53. Your affiant has also reviewed business records from the Virginia Employment Commission (VEC), which did not reflect any reported W-2 wages for LAILA ALAYAT. I have also reviewed the New Jersey Mainframe Wage Record System, which last reflected that the last quarterly wages earned by LAILA ALAYAT occurred in 2007. Review of Virginia Employment Commission (VEC) records did not reflect any reported W-2 wages for EYAD SALAHEDIN. The New Jersey Mainframe Wage Record System records reflect that EYAD SALAHEDIN last earned reported wages in New Jersey in 2011. Neither of LAILA ALAYAT or EYAD SALAHEDIN's located legitimate earnings were commensurate with either the time frame or the type of cash transactions at issue.

## CONCLUSION

Based upon the facts described throughout this affidavit, I respectfully submit that there is probable cause to believe that EYAD SALAHEDIN and LAILA ALAYAT conspired with each other and others to traffic contraband cigarettes, and that SALAHEDIN and ALAYAT knowingly structured their cash purchases of those Virginia-tax stamped cigarettes in order to

avoid the Form 8300 filing requirement; and that there is likewise probable cause to believe that ALAYAT knowingly tampered with another individual in an attempt to order to influence, delay, or prevent the testimony of that individual in an official proceeding.

I therefore respectfully request that this Court issue criminal complaints charging EYAD SALAHEDIN and LAILA ALAYAT with violating 31 U.S.C. § 5324 (Structuring) and 18 U.S.C. §§ 371 (conspiracy to traffic contraband cigarettes) and 2342(a) (trafficking contraband cigarettes), and charging LAILA ALAYAT with violating 18 U.S.C. § 1512(b)(1) (witness tampering), as well as issue warrants authorizing their arrest on those criminal complaints.

Stacey Ivie
Detective, HIDTA Task Force
Deputized United States Marshal

Sworn to and subscribed
Before me this 10th day of February, 2016.

/s/

Roderick C. Young
United States Magistrate Judge

18

# **Exhibit 1**

**Photo of EYAD SALAHEDIN**



VIRGINIA DEPARTMENT OF MOTOR VEHICLES

DMV REPLY

QD.VA09900M1.SOC/

SALAHEDIN,EYAD,KHALIL PREVIOUS DWI: 00

HENRICO,VA 232281829
SEX/M. DOB/1976/      . HGT/506. WGT/165. HAI/BK. EYE/BR.
SOC/            SSN:
DRIVER: EXP/ 2022/03/10
DRIVER LICENSE STATUS - LICENSED
DRIVER LICENSE CLASS: NONE ENDOR: RESTR: NONE
DRIVER POINT BALANCE:
ORGAN DONOR:
VETERAN:
EMERGENCY CONTACT INFO:

# **Exhibit 2**

## **Photo of LAILA ALAYAT**

